

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,439 and AP-74,185

## EX PARTE MAX MOUSSAZADEH, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM HARRIS COUNTY

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion. MEYERS, J., did not participate.

## O P I N I O N

Applicant pled guilty to the offense of murder without an agreement for punishment. The trial court accepted the plea and sentenced applicant to seventy-five years' incarceration. On direct appeal, the court of appeals affirmed the judgment of the trial court. *Moussazadeh v. State*, 962 S.W.2d 261 (Tex. App.—Houston [14th] 1998, pet. ref'd)(*Moussazadeh I*). Thereafter, applicant filed an application for habeas corpus relief. In a published opinion, we denied relief because applicant "failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential element of the plea

agreement." *Ex parte Moussazadeh*, 64 S.W.3d 404, 413 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 813 (2002) (*Moussazadeh II*, #AP-74,185). Applicant filed a subsequent application for writ of habeas corpus, *Moussazadeh III*, #AP-76,439, that asserts that trial counsel's mistaken advice regarding parole eligibility rendered his plea involuntary. We ordered the subsequent application filed and set for submission. After applicant filed the subsequent application, he also filed a suggestion for reconsideration that asks this Court, on its own motion, to reconsider its decision in *Moussazadeh II.*

This Court, on its own initiative, may reconsider a prior denial of habeas corpus relief. TEX. R. APP. P. 79.2(d). We now reconsider, on our own initiative, the claim raised in applicant's second application for writ of habeas corpus, *Moussazadeh II*,[1] and grant relief. Applicant's subsequent application, *Moussazadeh III*, is dismissed.

In *Moussazadeh II,* we discussed how applicant, under indictment for a capital murder committed on September 12, 1993, pled guilty to the reduced offense of murder without a sentencing agreement. Applicant, a juvenile at the time of the offense, served as "look-out" while one of his three co-defendants shot and killed a man during a robbery. *Moussazadeh II*, 64 S.W.3d at 406-07. While initially rejecting the state's offer of a guilty plea to the lesser offense of murder, ultimately applicant agreed to plead guilty to murder without a punishment agreement. The agreement included applicant's promise to testify at a co-defendant's trial, which he did. *Id*. at 407-09. During that testimony, applicant indicated that he understood that, in pleading guilty to the murder offense and

---

[1] Applicant's first application sought an out-of-time appeal, which we granted. *Ex parte Moussazadeh*, No. AP-72,200 (Tex. Crim. App. delivered October 25, 1995) (not designated for publication). Such an initial application seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications. *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000).

because of parole-eligibility laws, he was facing a significantly lesser term of imprisonment than he would have faced if convicted of capital murder. *Id*. at 408-09. After the co-defendant's trial ended, applicant was sentenced to seventy-five years' incarceration without a deadly-weapon finding. *Id*. at 409.

Applicant's claim in his previous writ application, which we now reconsider, asserted that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary." He argued that "the matter of parole eligibility was implicitly incorporated in [his] plea agreement." He also argued that his "guilty plea was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." We quote from our opinion in *Moussazadeh II*.

> It is quite possible that no one in this proceeding knew that the parole law had changed dramatically just 11 days before this robbery-murder. Applicant's parole eligibility is measured by the law in effect on the date of the offense. Under the law effective *until* September 1, 1993, a person serving a life sentence for capital murder was not eligible for parole until serving a flat 35 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(2). *After* September 1, 1993, that person was not eligible for parole until serving a flat 40 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(2) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person whose conviction included a deadly weapon finding was not eligible for parole until he had served a flat one-fourth of his sentence, up to a maximum of 15 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person whose conviction contained a deadly weapon finding was required to serve a flat one-half of the sentence up to a maximum of 30 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person convicted of murder (but whose conviction did not contain a deadly weapon finding) was eligible for parole when his good time plus flat time equaled one-quarter of the sentence up to 15 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person convicted of murder was not eligible for parole until he had served one-half of his sentence or 30 years. TEX. CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993).

> The affidavits submitted by both applicant and his trial counsel with his habeas application state that they did not know of these statutory changes. Indeed, we may fairly infer from the record that the judge, prosecutor, and [the co-defendant's] counsel shared the same misunderstanding. However, neither trial

counsel's nor applicant's affidavits state that the prosecutor agreed to make applicant's parole eligibility a term or essential element of the plea agreement. There is no evidence that the prosecutor ever discussed any specific term or particular percentage of the sentence that he believed applicant should or would serve in return for the prosecutor's dropping the charges from capital murder to straight murder. In sum, we are unable to find any evidence that proves the prosecutor or judge caused applicant to plead guilty based upon an incorrect understanding of Texas parole law. [Citation omitted.]

*Id*. at 409-10.

In *Moussazadeh II,* we held that a finding that parole eligibility formed an essential part of a plea agreement must be founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by both the prosecution and the applicant in a habeas proceeding. *Id*. at 412. We were "unable to conclude . . . that parole eligibility played any part, implicit or explicit, in the plea agreement made between the prosecution and applicant." *Id*. at 413. We therefore "den[ied] applicant relief because he . . . failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential element of the plea agreement." *Id*. Acknowledging our prior holdings that a guilty plea is not rendered involuntary simply because the defendant received and relied upon erroneous advice of counsel concerning parole eligibility, and that both parole eligibility and parole attainment are highly speculative future facts, we likewise rejected applicant's contention that his plea was involuntary regardless of whether the parole eligibility misinformation was implicitly incorporated into the plea agreement. *Id*. at 413-14.

The circumstances surrounding applicant's conviction are not in dispute. Prior to applicant's plea, trial counsel advised applicant about his parole eligibility, and that advice was incorrect. As we stated in *Moussazadeh II*, "The affidavits submitted by both applicant and his trial counsel with

his habeas application state that they did not know of these [recently effective] statutory changes [in the parole-eligibility law]. Indeed, we may fairly infer from the record that the judge, prosecutor, and counsel for [the co-defendant against whom applicant testified] shared the same misunderstanding." *Moussazadeh II*, 64 S.W.3d at 410.

Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970); "voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"). A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly. *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991). *See also Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) ("When counsel's representation falls below this [*Strickland*] standard, it renders any resulting guilty plea involuntary.").

Applicant's initial application contended that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary," "the matter of parole eligibility was implicitly incorporated in [his] plea agreement," and that his "plea agreement was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." Applicant now asks this Court to reconsider his application in light of *Padilla v. Kentucky*, 559 U.S. ___, 130 S.Ct. 1473 (2010), and overrule our previous decisions in *Ex parte Evans*, 690 S.W.2d 274 (Tex. Crim. App. 1985), and *Moussazadeh II*.

The state contends that *Padilla* has no bearing upon the Court's disposition of applicant's

claim and that *Ex parte Evans* and *Moussazadeh II* are "still based upon sound logic regarding parole eligibility and parole attainment as being highly speculative circumstances that does [sic] not render a guilty plea involuntary."

We conclude that both applicant and the state are partly correct: *Padilla* is not applicable to the facts before us, and our decisions in *Ex parte Evans* and *Moussazadeh II* were incorrect. We now disavow our prior decisions in *Ex parte Evans* and *Moussazadeh II* to the extent that they (1) require *parole-eligibility* misinformation to form an essential part of the plea agreement in order to make a showing of an involuntary plea that resulted from ineffective assistance of counsel, based upon such misinformation and (2) fail to appropriately recognize the distinction between parole *eligibility* and parole *attainment*.

We have previously held that, because of the extremely speculative nature of parole attainment, advice from counsel concerning parole does not render a plea involuntary. *Ex parte Evans*, 690 S.W.2d at 279. However, *Evans* stated that, because "eligibility for parole is a fluctual [sic] societal decision; highly subject to change," *id.* at 278, an applicant must prove, by a preponderance of the evidence, that parole eligibility was an affirmative part or essential element of the plea bargain.[2] *Id.* This is an incorrect statement of the law. While the general eligibility rules for parole may change over time, the eligibility rules remain the same for a given conviction. Likewise, an inmate who was eligible for mandatory release at the time of the offense remains eligible for mandatory release on that conviction, even if that offense subsequently becomes eligible for only discretionary mandatory release. "The statute in effect when the holding offense is

---

[2] *See also Ex parte Trahan*, 781 S.W.2d 291, 292-93 (Tex. Crim. App. 1989) (written plea memorandum reflected that applicant would become eligible for parole consideration after having served one-fourth of sentence; habeas relief available when that was not the law and terms of plea agreement were impossible to fulfill).

committed determines an inmate's eligibility for release on mandatory supervision or parole." *Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005). *Evans* held that, because parole attainment was speculative, its "legal importance on the subject of voluntariness of a guilty plea" should be "discounted." *Ex parte Evans*, 690 S.W.2d at 279. Then, based on its incorrect statement of law, *Evans* made an erroneous logical leap and applied the same standard to parole eligibility. As a result, *Evans* held that erroneous advice as to either parole eligibility or parole attainment would not render a plea involuntary. *Id*. In *Moussazadeh II*, we further conflated the concepts of eligibility and attainment.

> Although one can determine current parole eligibility with some degree of certainty, it is really parole attainment that is significant to a plea bargaining defendant. It matters very little that a person is eligible for parole in one year on a ten year sentence if virtually no one is being paroled in less than seven or eight years on a ten year sentence. It is for this reason that we have termed parole attainment "too speculative to warrant being given effect upon" a defendant's guilty plea.

64 S.W.3d at 413, *quoting Evans*, *supra*.

Contrary to our prior decisions, there are considerable, concrete distinctions between parole *attainment* and parole *eligibility*. Parole attainment is indeed highly speculative, due to various factors associated with circumstances surrounding an individual prisoner's parole application, such as the prisoner's behavior in prison, the composition and attitude of the parole board, the identity and attitude of the governor, the population of the prison system, and regulations governing "good time." *See Ex parte Carillo*, 687 S.W.2d 320, 325 (Tex. Crim. App. 1985) (Miller, J., concurring). The question of parole eligibility, however, elicits a straightforward answer because an applicant's parole eligibility is determined by the law in effect on the date of the offense. *Ex parte Thompson*, 173 S.W.3d at 459. The statutes that govern the punishment of a particular offense control the issue of

parole eligibility and are not subject to alteration, absent legislative amendment. Even in the event of a legislative amendment making a law more stringent, an applicant is subject only to the law governing parole eligibility at the time the offense was committed. *See Ex parte Alegria*, 464 S.W.2d 868, 874-75 (Tex. Crim. App. 1971) (retroactive application of parole statute that increased defendant's cumulation of years required for parole eligibility violated *ex post facto* clauses of United States and Texas Constitutions).[3] Parole-eligibility requirements are direct consequences because they are a definite and largely automatic result of a guilty plea. *See Mitschke v. State*, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004). Parole attainment, on the other hand, is not governed by statute and is granted at the discretion of the parole board.

On a claim of involuntary plea, the standard for the analysis of harm under the *Strickland* protocol as expressed in these cases may be stated generally as "but for the erroneous advice of counsel, the applicant would not have plead guilty." *Ex parte Harrington*, 310 S.W.3d at 458. *See also Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999); *Ex parte Stephenson*, 722 S.W.2d 426, 428 (Tex. Crim App. 1987).

When deciding whether to accept or reject a plea offer, a defendant will likely consider the actual minimum amount of time he will spend incarcerated. In order to properly consider his options, a defendant needs accurate information about the law concerning parole eligibility. Although we continue to recognize the distinction between direct and collateral consequences, we now hold that the question of whether parole eligibility forms an affirmative part or essential element

---

[3] A law that changes the punishment for a crime after the crime has been committed is an unconstitutional *ex post facto* law only if it inflicts a greater punishment than did the previous law. *Ex parte Tate*, 471 S.W.2d 404, 406 (Tex. Crim. App. 1971)(op. on reh'g); *Ex parte Scott*, 471 S.W.2d 54, 55-6 (Tex. Crim. App. 1971). "[A] statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as *ex post facto* with reference to that crime." *Rooney v. North Dakota*, 196 U.S. 319, 325 (1905).

of the plea agreement is not determinative of this Court's deficient-performance inquiry under *Strickland*.

To obtain habeas corpus relief on a claim of involuntary plea, an applicant must meet both prongs of the *Strickland* standard: (1) counsel's performance "was deficient; and (2) that a probability exists, sufficient to undermine our confidence in the result, that the outcome would have been different but for counsel['s] deficient performance." *Ex parte White*, 160 S.W.3d 46, 49 (Tex. Crim. App. 2004). In the context of involuntary plea, the "different outcome" is choosing not to plead and instead choosing to go to trial.

Counsel's performance is deficient if it is shown to have fallen below an objective standard of reasonableness. *Id*. at 51; *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). The constitutionally appropriate level of reasonableness is defined by the practices and expectations of the legal community and prevailing professional norms therein. *Strickland, supra*, at 688. In situations in which the law is not clear, counsel should advise a client that pending criminal charges may carry a risk of other serious consequences. When a serious consequence is truly clear, however, counsel has an equally clear duty to give correct advice. Both failure to provide correct information and providing incorrect information violate that duty.

The terms of the relevant parole-eligibility statute are succinct and clear with respect to the consequences of a guilty plea. Based upon the date in which the instant offense was committed, Tex. Code Crim. Proc. art. 42.18 § 8(b)(3) clearly and succinctly provided that "a person convicted of murder was not eligible for parole until he had served one-half of his sentence or thirty years." *Moussazadeh II, supra*, at 409. Applicant's counsel could have easily determined the applicable parole-eligibility requirements simply by reading the text of the statute. Instead, applicant's counsel

failed to inform him of changes in the parole-eligibility statutes that essentially doubled the length of time he must serve before becoming eligible for parole. The fact that the amendments took effect only eleven days before the offense is of no consequence.[4]

The performance of applicant's counsel was deficient: the consequences of applicant's plea could have been easily determined by reading the applicable statute. Parole-eligibility requirements are presumptively mandatory, and applicant's trial counsel provided incorrect advice. We conclude that applicant has sufficiently proved that his counsel was constitutionally deficient.

The portion of applicant's sentence that must be served before he becomes eligible for parole was double the portion that he was led to believe he must serve. Based on applicant's affidavit of January 13, 1997,[5] we also conclude that applicant would not have pled guilty if he had known the actual time he would have to serve, and thus prejudice is shown. We find that the habeas court's findings of fact and conclusions of law are supported by the record and agree that relief should be granted.

Accordingly, upon reconsideration, we grant relief. The judgment in this cause is hereby vacated, and applicant is remanded to the custody of the Harris County Sheriff to answer the charges set out in the indictment. The trial court shall issue an appropriate bench warrant within ten days after the mandate of this Court issues. Copies of this opinion shall be sent to the trial court and to the Texas Department of Criminal Justice, correctional institutions division.

---

[4] Parole eligibility is not speculative. In this case, parole eligibility was statutorily determined and, at the time of the plea, there was no speculation about those statutory terms. Those terms of parole *eligibility* were clear, succinct, and explicit. It appears that all parties involved were unaware that parole eligibility had changed significantly just a few days before the commission of the alleged offense.

[5] "Had Judge Azios, Mr. Jones, or Mr. Cogdell told me that a murder conviction would require me to serve aggravated time of one-half of my sentence, up to a maximum of 30 years, even without a deadly weapon finding, I would not have accepted the plea bargain."

Delivered: February 15, 2012
Publish