

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. WR-79,040-02

### EX PARTE ALESHA DEAN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. W09-40844-J (B) IN CRIMINAL DISTRICT COURT NO. 3
### DALLAS COUNTY

**KEASLER, J., filed a dissenting opinion, in which HERVEY and NEWELL, JJ., joined.**

### DISSENTING OPINION

The Court sidesteps the "difficult"[1] issue that we filed and set Alesha Dean's application to resolve: whether this Court's opinion in *Ex parte Moussazadeh* (*Moussazadeh III*)[2] applies retroactively. Although the habeas judge relied upon this case in recommending we grant Dean relief, the Court grants relief on what it identifies as the law as it existed at

---

[1] *Ante*, at 14.

[2] 361 S.W.3d 684 (Tex. Crim. App. 2012) (hereinafter *Moussazadeh III*).

the time of her plea. But in defining that law, the Court ignores a significant opinion that altered the opinions it relies upon. In its formulation of past law predating *Moussazadeh III*, the Court leaves out *Moussazadeh II*, an opinion that undermines the majority's reasoning and defeats Dean's claim.

### The Evolution of Incorrect Parole Advice on a Plea's Voluntariness

In *Ex parte Young*,[3] Young pleaded guilty to two counts of aggravated robbery pursuant to a plea agreement and was sentenced to fifteen years' imprisonment for each count. In his application for a writ of habeas corpus, Young claimed that counsel advised him that he would be parole eligible after serving only three years if the judgment did not have a deadly weapon finding, when, in fact, he would be eligible after serving five years. We agreed with the habeas court's findings of fact and concluded that counsel's advice rendered Young's plea involuntary.[4] The *Young* Court stated, "By implication, from the record, the trial court also labored under this misunderstanding of the law in that he followed the 'plea bargain' to *not* enter an affirmative finding that a deadly weapon was used."[5] The Court then held that a defendant's plea may be rendered involuntary if his attorney grossly misinforms him about his parole eligibility date and that misinformation induces him to plead

---

[3]  644 S.W.2d 3 (Tex. Crim. App. 1983).

[4]  *Id.* at 4–5.

[5]  *Id.* at 4 (emphasis in original).

guilty or nolo contendere.[6]

Two years later, in *Ex parte Evans*[7] we reconsidered *Young*. Evans pleaded guilty to aggravated robbery and was sentenced to ten years' imprisonment. He filed an application for a writ of habeas corpus claiming that he relied on counsel's incorrect advice that he would be parole eligible in eighteen to twenty months. The habeas court concluded that counsel's advice was deficient and rendered Evans's plea involuntary. We disagreed.[8] We recognized that "some expectations of a defendant about the circumstances or consequences of his plea, though perhaps important to him, are just too speculative to warrant being given effect upon his guilty plea."[9] And given the speculative nature of parole attainment, we declined to hold that Evans's plea was involuntary.[10] The "speculative nature of parole *attainment*," we wrote, "is such as to discount its legal importance on the subject of voluntariness of a guilty plea. This legal importance is discounted to the extent that erroneous advice of counsel on the subject of parole *eligibility* will not render the plea involuntary."[11]

---

[6] *Id.* at 5.

[7] 690 S.W.2d 274 (Tex. Crim. App. 1985)

[8] *Id.* at 276.

[9] *Id.* at 278.

[10] *Id.* at 278–79.

[11] *Id.* at 279 (emphasis in original).

To be considered an involuntary plea in this context, *Evans* required parole eligibility to be an affirmative part of the plea agreement that an applicant relied upon as "an essential part of the quid pro quo for pleading guilty."[12] *Evan*s also clarified *Young*'s holding. Because the trial judge also misunderstood the law on parole eligibility in *Young*, this understanding of parole eligibility "was elevated to the status of an element of the plea bargain."[13] This was, we pointed out, consistent with what we said in *Ex parte Carillo*: "Thus in *Young*, the agreement was made a part of the plea bargain and sanctioned by the trial court."[14] And because this element of the plea bargain was not "kept," the *Young* Court held that the plea was involuntary.[15] We also conceded in *Evans* that "other wording" in *Young* perhaps indicated that its holding was also based on the premise that counsel's deficient advice on parole eligibility would make a defendant's guilty plea involuntary *per se*.[16] We disavowed this premise and overruled *Young* to the extent it conflicted with *Evans*. *Evans* qualified *Young*'s language that suggested a defendant's guilty plea would be rendered involuntary simply because counsel misadvised him on parole eligibility.[17]

---

[12] *Id.*

[13] *Id.*

[14] 687 S.W.2d 320, 322 (Tex. Crim. App. 1985).

[15] *Evans*, 690 S.W.2d at 279.

[16] *Id.*

[17] *Id.*

In *Ex parte Moussazadeh II*,[18] we again considered whether counsel's deficient parole-eligibility advice may render a defendant's guilty plea involuntary. Moussazadeh was charged with capital murder, pleaded guilty to murder, and was sentenced to seventy-five years' imprisonment. His counsel, like counsel in *Young* and *Evans*, misadvised him on his parole eligibility date.[19] He filed an application for a writ of habeas corpus claiming that counsel's advice rendered his plea involuntary and urging this Court to reconsider its holding in *Evans*.

The *Moussazadeh II* Court reaffirmed *Evans*'s holding that parole eligibility must be an affirmative part of the plea agreement, but significantly altered how the Court would apply it. Not only did the Court decline to revisit *Evans*,[20] it heightened the burden applicants must satisfy in proving parole eligibility was an affirmative part or essential part of the plea bargain. The Court was no longer willing to find parole eligibility an implicit element of a plea bargain elements by virtue of a trial judge's acceptance of a plea bargain. Rather, the *Moussazadeh II* Court turned to general contract law principles and held that it would not "imply a parole eligibility element or covenant unless it appears from the plea agreement's

---

[18] *Ex parte Moussazadeh*, 64 S.W.3d 404 (Tex. Crim. App. 2001) (hereinafter *Moussazadeh II*), *rev'd on reconsideration*, *Moussazadeh III*, 361 S.W.3d 684 (Tex. Crim. App. 2012).

[19] *Id.* at 409–10.

[20] *Id.* at 414.

express terms that both parties clearly contemplated this element or covenant."[21] The Court held that going forward, whether parole eligibility formed an essential part of a plea agreement must be "founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by *both* the prosecution and applicant in a habeas proceeding."[22] And after reviewing the record, we concluded that Moussazadeh failed to prove, by a preponderance of the evidence, that his plea was induced by his misunderstanding of applicable parole law and parole eligibility formed an essential element of the plea agreement.[23] The majority only references *Moussazadeh II* in postscript to explain that *Moussazadeh III* overruled it, as well as *Evans*, ten years later.[24]

Dean pleaded guilty to intentionally and knowingly causing serious bodily injury to a child by omission in June 2011, and her conviction was final in February 2012. Assuming *Moussazadeh III* does not apply to Dean's involuntary plea claim and prudence permits deciding the claim on past law, *Moussazadeh II*—not *Young* and *Evans*—controls.

### *Moussazadeh II*'s Application

From my review of the writ record containing the written plea agreement, the formal

---

[21] *Id.* at 411–12.

[22] *Id.* at 412 (emphasis in original).

[23] *Id.* at 413.

[24] *Ante*, at 12–15.

record at the plea hearing, and the evidence developed by both the State and Dean throughout the habeas litigation, I would conclude that Dean is not entitled to relief under *Moussazadeh II*. The written plea agreement contains only a single, boilerplate passage about parole: "I affirm that my plea and judicial confession are freely and voluntarily made, and not influenced by any consideration of fear, persuasion, or delusive hope of pardon or parole." Although "parole" appears in the plea agreement, the "delusive hope" language naturally mitigates against any suggestion that parole was an essential element of the plea bargain. Without the presence of express parole terms, the plea agreement offers no support to find that parole eligibility was considered by the parties.

Through the lens of *Moussazadeh II*, the record of the plea hearing does not support Dean's involuntary-plea claim. The plea hearing was ordinary: Taking a mere six pages in the record, the judge ticked through the required waivers and admonitions, accepted Dean's judicial confession, and accepted the plea bargain as presented. The judge sentenced Dean to twenty-five years' confinement, but before remanding Dean into custody the judge asked, "Is this a 3-G offense?" Dean's counsel answered, "It is not, Your Honor." The State did not respond. I find no support in the balance of the writ record, including the live hearing testimony, to conclude that parole eligibility even factored into the plea-bargain discussions, much less formed an essential part of the plea agreement between Dean and the State.

Without more, the Court cannot conclude consistent with *Moussazadeh II* that parole-eligibility was an element of the plea bargain because it was not expressly contemplated by

the parties.[25] The Court today finds that Dean, her attorney, and the trial judge all agreed to the plea bargain while under the mistaken impression that Dean would serve non-aggravated prison time.[26] Finding similarity with the facts of *Young* in which the record "implicitly" demonstrated the judge's misunderstanding of the law, the Court today concludes that the record shows that Dean's parole eligibility "was elevated to the status of an element of the plea bargain."[27] Citing *Young* and *Evans*, the Court holds that "[Dean's] evidence satisfies the additional requirement that there be some manifestation in the record to show that the issue of her parole eligibility was elevated to the status of an element of the plea bargain."[28]

Yet the Court does what we said we would no longer do; it implies a parole eligibility element even though the record does not establish that it was an element contemplated by the parties.[29] It is also unclear to me how the Court concludes parole eligibility is an element of plea bargain without one word from the State, the only party other than Dean privy to the plea agreement's negotiation.[30] The Court's holding today flies in the face of *Moussazadeh*

---

[25] *Id.* at 411–12.

[26] *Ante*, at 12.

[27] *Id.*

[28] *Id.*

[29] *See Moussazadeh II*, 64 S.W.3d at 411–12.

[30] *See Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009) ("The only proper role of the trial court in the plea-bargain process is advising the defendant whether it will 'follow or reject' the bargain between the state and the defendant.").

*II*'s reliance on contract law principles and repudiation of *Young*'s and *Evans*'s endorsement of finding a plea-agreement element by implication. As in *Moussazadeh II* itself, the Court today should conclude that it "cannot divine any 'parole eligibility' agreement—either implicit or explicit—from the record."[31]

I would rather the Court address the *Moussazadeh III* retroactivity issue we initially set out to resolve. If retroactive, *Moussazadeh III* clearly offers Dean the least onerous path to relief because the current law no longer requires an applicant prove that parole eligibility formed an essential element of the plea bargain.[32] The majority instead chose a path to revisit past law and attempt to apply it to Dean's claim, but it results in a faulty analysis and erroneous conclusion. If it applied the correct law, the Court would have to deny Dean's claim because she fails to prove, by a preponderance of the evidence, that her plea was induced by a misunderstanding of the applicable parole law that formed an essential element of the plea agreement.[33]

FILED: November 23, 2016

DO NOT PUBLISH

---

[31] *Moussazadeh II*, 64 S.W.3d at 412.

[32] *See Moussazadeh III*, 361 S.W.3d at 690.

[33] *See Moussazadeh II*, 64 S.W.3d at 413.