75,937-01,02,04
AP-76,779

MOTION DENIED
DATE: 11-10-15
BY: P.C.

IN THE COURT OF CRIMINAL APPEALS
CAUSE-75, 937-07, WR-75, 937-06, WR-75, 937-08
TR CT 5617, 5593, 5591-A

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 04 2015

Abel Acosta, Clerk

STATE OF TEXAS

V.

JAMES ALLEN PELLOAT, APPELLANT PRO SE

## MOTION FOR RECONSIDERATION FROM DECISION RENDERED IN THE COURT OF CRIMINAL APPEALS

Now comes Appellant, James Allen Pelloat, in the above cause(s) to request reconsideration from this court of the decision rendered on 8/14/2015. In support of this reconsideration, the Appellant submits the following:

### I

Appellant made every effort available to him to follow the proper procedure and has shown due diligence to ensure as best he could his statutory right to file his amended 1107 was protected. Once he received all of the supplemental records from Newton County that were filed in this original 1107, he found two pieces of new evidence that he had not seen or knew of prior to trial. These pieces of evidence were (1) the transcripts from his day in court, March 23, 2005, and (2) a finding of facts and conclusion of law. A copy of these two new items of evidence is included as exhibits. In June of 2012, he filed his amended 1107 with Bree Allen, Newton County District Clerk.

He periodically sent letters after he submitted his amended 1107 to Ms. Allen asking about the status. Two copies of such letters are included in this motion as an exhibit. He never received a response from Ms. Allen in 2013.

He was diagnosed with state 3 prostate cancer and began receiving treatment via surgical removal and radiation treatment. Upon the completion of his hospitalization and therapy of 6 weeks from January to March 2015, he immediately filed a motion with the judge in his case to have the District Clerk process his amended 1107. The District Clerk never processed his 1107 and merely kept the motion un-filed and on moot status. This prejudiced his due process right and access to the courts

and the rules of the criminal court of appeals procedure. This non-compliance with the Code of Criminal Procedure Rule 1107 also severely prejudiced his access to the courts.

## II

The first piece of new evidence he found in the supplemental findings of facts and conclusions of law from Newton County dated September 26, 2011, the District Attorney stated that "His attorney knew about the enactment of September 1, 2003, for P.C. 21.12" on item number 12. This meant that his attorney, William Morian, knew of cause No(s) 5594 and 5618 which both are deemed as ex-post facto law in the United States and the Texas Constitution. The attorney was also aware that Appellant was being wrongfully convicted and sent to prison. By withholding such information from Appellant, his counsel was ineffective and incompetent. See Ex Party Moussazadeh 361 sw 3d 648. The withholding of such important facts by Appellant's lawyer and the District Attorney made his guilty plea unknowingly and involuntary and tainted the entire judicial process.

## III

With the two, possibly three, illegal P.C. 21.12 charges, a known charge on an invalid indictment 5617, a known charge 5594 where the victim lied about the date (where nothing happened until his 17th birthday) that would invalidate the charge because of the conflict that the alleged crime occurred. If the court ruled against the alleged date, Appellant would have been convicted of only one of the six charges thus making the outcome totally different and proving the second prong of *Strickland v. Washington* and items mention in I, II, and III proving the first prong of *Strickland.*

## IV

In January 2005, Appellant was indicted (see indictment 5617) for Aggravated Sexual Assault that allegedly occurred on May 1, 2001. Through school documents, the attorney proved that Appellant had not been hired to teach in Newton ISD. The day of the plea bargain conference, District Attorney Lewis stated "that all they had to do was change the last number in the year from 2001 to 2002 and that charge would still be valid." The Appellant attempted to express to the District Attorney while at the conference that even with the date changed from 2001 to 2002, it would still be wrong. Following the conference Appellant told his attorney, Mr. Morian, that nothing happened until much later in the summer. The record indicates the date of birth of the alleged victim and the sex between Appellant and the victim had to occur prior to June 11, 2002. Appellant stated that the sex occurred much later in the summer and this should have made Mr. Morian aware that indictment **5617** was invalid. The District Attorney lowered the charge from Aggravated Sexual Assault to Sexual Assault. This action extended the statute of limitations for 20 years more. (See Judgment for lowering charge.) This lowering was done without judicial knowledge and without Appellant's knowledge since no such arrangements were discussed at Appellant's plea bargain conference. The changing of the date and lowering of the charge deprived Appellant of a right given to him in the United States and Texas Constitution

On March 23, 2005, Appellant appeared before the Honorable Judge Monte Lawlis for acceptance of Appellant's plea bargain and sentencing. Appellant's attorney, Mr. Morian, questioned the lowering of cause 5617 from Aggravated Sexual Assault to Sexual Assault to make clear that it was lowered as a lesser included offense (see trial transcripts). The District Attorney stated, "Yes, it was lowered as a lesser included crime and it was plainly written on the judgments." The judgments at no time show a "lesser included crime" showing that the District Attorney openly committed perjury by consciously lying concerning the lesser included crime.

## PRAYER

Appellant, James Allen Pelloat, prays this Honorable Court will accept this Motion for

Reconsideration and bring this cause back before the court for proper redress.

Humbly submitted,

James Allen Pelloat
TDCJ # 1289716
CT Terrell Unit (R-3)
1300 FM 655
Rosharon, Texas 77583-8609

## CERTIFICATE OF SERVICE

I, James Allen Pelloat, hereby certify that a true and correct copy of this Motion for Reconsideration
has been furnished via US Postal Services to the following:

Abel Acosta, Clerk
The Court of Criminal Appeals
PO Box 12308 Capitol Station
Austin, TX 78711

Bree Allen, District Clerk
1A Judicial Court
PO Box 535
Newton, TX 75966

## CAUSE NOS. 5591, 5593, 5594 & 5617

| THE STATE OF TEXAS | * | IN THE DISTRICT COURT |
|---|---|---|
| | * | |
| VS. | * | 1-A JUDICIAL DISTRICT |
| | * | |
| JAMES ALLEN PELLOAT | * | NEWTON COUNTY, TEXAS |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

## PLEA

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

On March 24, 2005 the following proceedings were had in the 1-A Judicial

District Court of Newton County, Texas:



At _8:00_ ~~FILED~~ O'clock _P_ M

OCT 19 2011

BREE ALLEN
District Clerk, Newton County, Texas
By _____ ~~Deputy~~



I certify this to be a true and correct copy
of the original on file in the District Clerk's
Office, Newton County, Texas
Bree Allen, District Clerk
Attn & Date _____
By _____
I certify this to be a true and correct copy
of the original on file in the District Clerk's
office, Newton County, Texas

# ORIGINAL

## APPEARANCES

FOR THE STATE:

MR. A.W. DAVIS
DISTRICT ATTORNEY
NEWTON, TEXAS

FOR THE DEFENDANT:

MR. WILLIAM MORIAN
SEALE, STOVER & BISBEY
JASPER, TEXAS





Fiied _____
Attn & Date _____
By _____

THE JUDGE: Court come to order. Cause No. 5591, 5593, 5594, 5617; The State vs. James Allen Pelloat.

MR. DAVIS: The State's Ready, Your Honor.

MR. MORIAN: Defendant's ready, Your Honor.

THE JUDGE: All right. Do you wish to have the indictments read?

MR. MORIAN: No, Your Honor. We'll waive the reading.

THE JUDGE: Is -- is the defendant the same person named in each indictment and is his name spelled correctly?

MR. MORIAN: Yes, Your Honor.

THE JUDGE: All right, at this time I'd ask the Defendant to stand.

THE DEFENDANT: (Stands).

THE JUDGE: Do you plead guilty or not guilty to the indictments in each of the cases I just named?

THE DEFENDANT: The ones you just named, sir, I plead guilty to, yes, sir.

THE JUDGE: Before I can accept your plea of guilty I have to understand several things. First of all, I want to know if you have understood all of the papers that you have signed?

THE DEFENDANT: Yes, sir.

THE JUDGE: And did you voluntarily sign these papers?

THE DEFENDANT: Yes, sir.

THE JUDGE: Are you entering this plea of guilty freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE JUDGE: In each case?

THE DEFENDANT: Yes, sir, in each case.



THE JUDGE: All right, I will accept the pleas of guilty in Cause No. 5591, 5593, 5594, and 5617. The state may present the evidence and the -- any recommendation.

MR. DAVIS: Thank you, Your Honor. The first case that we're going to present is 5591. The charge is improper relationship of an educator with a student. The defendant was arrested in this case on November the 7th of 2004 and indicted December the 6th of 2004. There has been plea bargaining in the case. Among the other things that have been agreed to in the plea bargaining, is that there's a judicial confession and an agreement that the evidence in the case may be summarized orally. And it's further agreed that the State witnesses and other evidence are available and informally presented to show that James Allen Pellcoat -- Pelloat, the defendant, on or about the date alleged in the indictment, prior to the presentment of the indictment in Newton County, Texas, did intentionally or knowingly commit the acts described in the indictment upon the victim, who was at the time younger than 17 years.

I'd ask you, Your Honor, to take judicial notice of all the papers on file in the case, and in particular, the three page guilty plea memorandum that's signed by the defendant, by his attorney, by me, and by Your Honor; the six page written plea admonish -- admonishments document which also includes the various waivers of the defendant, a judicial confession signed by the defendant; along with signatures of the defendant, his attorney, my signature, and yours. And I'd particularly ask that you take judicial notice of the two judicial confessions, one on page 5 of the written plea admonishments, and one on page 2 of the written plea mem -- the guilty plea memorandum. Both judicial confessions are in writing and sworn to under oath by the defendant before the district clerk.

After Your Honor has finished disposing of the case, at some point in this proceeding, there are victims and victim's family that wish to address the defendant.

THE JUDGE: All right. Mr. Morian, is this the agreement in 55 --

MR. DAVIS: 5591.

THE JUDGE: 5591. If you would recite that --

MR. MORIAN: Judge, these -- these -- the plea recommendation is basically to dispose of all cases at the same time, and there's going -- and that plea recommendation is that there's going to be a dismissal of one of the charges; so, altogether collectively those are going to -- that's how it's been presented to me.

THE JUDGE: 20 years? Yeah.

MR. MORIAN: Yes, sir.

THE JUDGE: Is this the agreement?

THE DEFENDANT: Yes, sir.

THE JUDGE: Mr. Morian, is this the record in all of the cases? Have -- have you had time to discuss these papers with your client and go over the papers?

MR. MORIAN: Yes, Your Honor, I have, and even today we've -- of course, as you know, we were supposed to have gotten started at 2:00 o'clock; and I've spent quite a bit of time with him since then going over the plea papers as well, and explaining it to him. He does understand what we're doing today.

THE JUDGE: All right. Mr. Pelloat, you understand that I've set out all of the warnings and information in writing, and you have had a chance to study that and go over that; is that correct?

THE DEFENDANT: Yes.

THE JUDGE: In all cases?

THE DEFENDANT: Yes, sir.

THE JUDGE: What I'm going to do, I will take each case separately and at the conclusion of each case then I will give anyone the opportunity at that time to make an impact statement, and we'll wait until we finish all of the cases.

MR. DAVIS: All right. Your Honor, at this time maybe it would be appropriate for the record if I went ahead and just stated the plea bargain as the State understands it and hopefully as the defendant understands --

THE JUDGE: All right.

MR. DAVIS: -- it at this point, before we go to one case at a time.

THE JUDGE: All right. Go ahead.

MR. DAVIS: The plea bargain is -- is that Mr. Pelloat has agreed to plead guilty in Case No. 5591, 5593, 5594, and 5617. In return we have agreed to recommend for your consideration a sentence of 20 years on each of those cases, with two of those sentences, specifically 5617 and 5593, to run consecutively as opposed to concurrently; and that is the basis of the agreement.

We've also agreed as part of the plea agreement to dismiss Case No. 5618. It's also, as of a few minutes ago, it's been agreed by the parties that No. 5592 will be set aside from this plea bargain that we're doing today, or this -- this procedure we're following today, will be completely set aside and the State will have the opportunity to try that -- that case at a future date, and the option to ask the Court to stack it along with the other -- the other convictions that -- that are in record.

THE JUDGE: All right. Let -- let me do this then. And this will apply to all -- all four cases. Is this the agreement, Mr. Morian?

MR. MORIAN: Yes, Your Honor, that's correct. Just to make sure that on Cause No. 5617, that is also now the lesser included second-degree felony offense rather than the first-degree. It was originally a first-degree felony.

MR. DAVIS: Yeah. The plea papers very plainly set -- set that out, Judge, as does the judgment that we've submitted --

THE JUDGE: All right.

MR. DAVIS: -- for Your Honor's consideration.

THE JUDGE: Is this the agreement?

THE DEFENDANT: Yes, sir.

THE JUDGE: All right. And you understand that initially 5592 was to be a part of this plea agreement, but there is no agreement

with reference to that case and that case has been withdrawn, and the State's attorney will have the option to call that case for trial at some later time. Do you understand that?

THE DEFENDANT: Yes.

THE JUDGE: And you understand also that there are two possibilities if -- if there is a conviction in that case and a sentence, that those sentence -- that sentence could be either run concurrently or it could run consecutively with these other sentences?

THE DEFENDANT: Yes, sir.

THE JUDGE: You understand that?

THE DEFENDANT: Yes, sir.

THE JUDGE: And Mr. Morian, you've had a chance to go over that with him and discuss that with him; is that --

MR. MORIAN: Yes, Your Honor, that's correct.

THE JUDGE: -- correct? All right.

MR. DAVIS: Just one other thing if I may, I take it that -- that you're ready for me to sum up as to the other three cases just as we did with --

THE JUDGE: Yes.

MR. DAVIS: -- with the first one.

THE JUDGE: If you'll go ahead and do that and then I can take care of all of them.

MR. DAVIS: I'll do them one at a time if you'd want me to.

THE JUDGE: Yes, sir.

MR. DAVIS: All right. I'd just like the record to reflect in 5593, 5594, and 5597 (sic), that we have had the same agreement in each of those cases as to Your Honor being able to take judicial notice of the evidence or the papers on file in the case, which include a judicial confession, and that we may

DISTRICT COURT NEWTON COUNTY TEXAS

summarize the evidence which in each case is that James Allen Pelloat on or about the date alleged in the indictment in the particular case referred to and prior to the presentment of that indictment in Newton County, Texas, did intentionally or knowingly commit the acts described in the indictment upon the victim in each of the cases, who was at that time younger than 17 years. And that that guilty plea memorandum and the written plea admonishment both include judicial confessions, both of which are sworn under oath before a district clerk, and we ask, Your Honor, once again to -- to take judicial notice of those documents.

THE JUDGE: Is this agreeable?

MR. MORIAN: Yes, Your Honor.

THE JUDGE: Is this agreeable?

THE DEFENDANT: Yes, it is.

THE JUDGE: All right. Anything further before I announce my acceptance or rejection?

MR. MORIAN: No, Your Honor.

THE JUDGE: All right. I will take judicial notice of the papers in each case, I will accept the plea agreement in each case. Based upon your plea of guilty in Cause No. 5591, 5593, 5594, 5617, you will be found guilty. You will be sentenced to confinement in the institutional division of the Texas Department of Criminal Justice for a period of 20 years. The sentences in Cause No. 5593 and 5617 will run consecutively. The sentences in the remaining two cases will run concurrently. By law you are entitled to credit for time served, and according to the notes provided me on the plea papers, that would be a total of 138 days as of today, and you will be given credit on these sentences for that period of time.

You can go ahead and be seated, and --

THE DEFENDANT: (Complies).

THE JUDGE: Will there be some statements?

MR. DAVIS: Yes, Your Honor.



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

IN COUNTY TEX.
2011 SEP 26 PM 2:50
BRLE ALLEN
DISTRICT CLERK

========================
### NOS. WR-75,934-01, WR-75,934-02, WR-75,934-03 & WR-75,934-04
========================

### EX PARTE JAMES ALLEN PELLOAT, Applicant

==============================================================
## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NOS. ND 5591, 5593, 5617 & 5594 IN THE 1A JUDICIAL DISTRICT COURT
## FROM NEWTON COUNTY
==============================================================

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Applicant filed an application for post conviction writ of habeas corpus. This Court is of the opinion that a hearing is not necessary and chooses to rely on affidavits and hereby enters the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. Applicant was indicted for six felony offenses:

   Cause Number 5591 – Improper Relationship Between Educator and Student

   Cause Number 5592 – Aggravated Sexual Assault

   Cause Number 5593 – Sexual Assault

   Cause Number 5594 – Improper Relationship Between Educator and Student

   Cause Number 5617 – Sexual Assault

   Cause Number 5618 – Improper Relationship Between Educator and Student.

2. Applicant entered into a plea bargain with the State and plead guilty to the following charges:

   Cause Number 5591 – Improper Relationship Between Educator and Student

Cause Number 5593 – Sexual Assault

Cause Number 5594 – Improper Relationship Between Educator and Student

Cause Number 5617 – Sexual Assault.

3. Cause numbers 5592 and 5618 were both dismissed.

4. Applicant was sentenced to twenty (20) years confinement on all four cases.

5. Cause number 5617 (Sexual Assault) was to run consecutive to the sentence in cause number 5593 (Sexual Assault). All other sentences would run concurrently.

6. The indictment in cause number 5594 alleged an offense date of November 7, 2001, which was prior to the enactment of the "Improper Relationship" statute. (Penal Code Section 21.12).

7. The date of offense reflected in the judgment and sentence in cause number 5594 was November 7, 2004. This date coincides with the offense dates alleged in cause numbers 5591 and 5593, which is after the enactment of Penal Code Section 21.12.

8. Evidence was provided Applicant's trial counsel pursuant to his motion for discovery, which included the victim's statement, Applicant's statement as well as other evidence, that indicated the conduct constituting the offense alleged in cause number 5594 continued until the time immediately prior to Applicant's arrest in 2004, after the enactment of Penal Code Section 21.12.

9. Applicant's trial counsel advised Applicant of all legal aspects in these cases including the elements of each one of the crimes needed to be proven by the State beyond a reasonable doubt as well as the range of punishment for each of the alleged crimes.

10. Applicant's trial counsel advised Applicant of the possibility of the convictions running consecutively in the event that he was found guilty.

11. Applicant's trial counsel advised Applicant that the exact date of the alleged offense did not have to be proven specifically as long as it was proven that the alleged act occurred within the statute of limitations for the particular offense and before the date of the indictment.

12. Applicant's trial counsel was aware of the effective date of the statute making an improper relationship between an educator and student a crime.

13. Applicant's trial counsel allowed Applicant to plead guilty to the offense in cause number 5594 because there was evidence that the prohibited conduct continued until 2004 and would have constituted an offense after the effective date of Texas Penal Code section 21.12.

14. Applicant's trial counsel further allowed Applicant to plead guilty to that offense because he believed he (Applicant) would have potentially received a much more lengthy prison sentence if convicted on all charges.

15. The sentence in cause number 5594 runs concurrent with other sentences imposed and therefore does not affect the amount of time Applicant will have to serve.

## II. CONCLUSIONS OF LAW

1. Applicant's plea was entered knowingly and voluntarily.

2. Applicant's trial counsel's conduct was not deficient conduct that fell below the standards of performance required of counsel in criminal cases.

3. Applicant's trial counsel did not render ineffective assistance of counsel.

4. Applicant has failed to meet his burden of proof by a preponderance of the evidence.

5. Applicant is not entitled to the relief requested in his Application for Writ of Habeas Corpus.

Having considered the evidence as set forth before this Court and in light of the foregoing Findings of Fact and Conclusions of Law, it is the opinion of this Court that the relief prayed for in this case be DENIED.

It is further ORDERED that copies of this document be served on the Applicant and counsel for the State.

Signed and entered on this 24 day of September, 2011.

JEROME P. OWENS, JUDGE
1A JUDICIAL DISTRICT COURT
NEWTON COUNTY, TEXAS

10-18-12

James Pelloat 1289716
Stringfellow Unit
1200 Fm 655
Rosharon, Texas, 77583

Bree Allen
Newton County District Clerk
P.O. Box 535
Newton, Texas, 75966

Dear Ms. Allen

On July 11, 2012 you filed my Amendment to my original 11.07, I know that once it is recieved it goes to the District Attorney and he has a set number of days to act on it and then it is sent to the judge for him to act on it and then it is sent to the Court of Criminal Appeals. Could you tell me where my Amended 11.07 is now and/or if it will be sent to the Court of Criminal Appeals? Thank you for your help.

Sincerely

James Pelloat

10-18-12

James Pellom 1289716
Stringfellow Unit
1200 FM 655
Rosharon, Texas, 77583

Bree Allen
Newton County District Clerk
P.O. Box 535
Newton, Texas, 75966

Dear Ms. Allen

On July 11, 2012 you FILED my Amendment to my Original 11.07, I know that once it is received it goes to the District Attorney and He Has a set number of days to act on it and then it is sent to the Judge for Him to act on it and then it is sent to the Court of Criminal Appeals. Could you tell me where my Amended 11.07 is now and/or if it will be sent to the Court of Criminal Appeals? Thank you for your help.

Sincerely
James Pellom

16

James Pelloat 1289216
Stringfellow Unit
1200 FM 655
Rosharon, Texas, 77583

11/11/12

Brie Allen
Newton County District Clerk
P.O. Box 535
Newton, Texas 75966

Dear Ms. Allen,

Approximately 1 month ago, I wrote to you concerning the status of my Amended 1107 form that you received and filed on July 11, 2012. This is my second request for information on the status of my Amended 1107. There are at least 3 fatal variances in indictment and judgement on case 5617. This needs to be addressed either by Newton County, the Court of Criminal Appeals or the Federal Court System. Please respond to this request.

Sincerely

James A. Pelloat

Ex Parte Moussazadeh, 361 S.W. 3d 684 (Tex. Crim. App. 2012)


( 11 PAGES )

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

▷

Court of Criminal Appeals of Texas.
Ex parte Max MOUSSAZADEH, Applicant.

Nos. AP–76,439, AP–74,185.
Feb. 15, 2012.

**Background:** After pleading guilty to murder, and after his murder conviction was affirmed on appeal, 962 S.W.2d 261, applicant sought a writ of habeas corpus, contending that his mistaken understanding of parole eligibility based on misinformation counsel conveyed to him rendered his guilty plea involuntary. The 232nd District Court, Harris County, A.D. Azios, J., entered findings of fact supporting relief. The Court of Criminal Appeals, 64 S.W.3d 404, denied relief. Applicant filed subsequent habeas application, and a suggestion for reconsideration asking the Court of Criminal Appeals, on its own motion, to reconsider its denial of initial habeas application.

**Holdings:** The Court of Criminal Appeals, Johnson, J., held that:

(1) it would reconsider, on its own initiative, applicant's initial habeas application;

(2) question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of court's deficient performance inquiry under *Strickland*; abrogating, *Ex parte Evans*, 690 S.W.2d 274;

(3) counsel's misinformation to defendant as to his parole eligibility constituted deficient performance; and

(4) counsel's error prejudiced defendant, and thus was ineffective assistance.

Relief granted upon reconsideration.

Keller, P.J., concurred in judgment, with opinion.

West Headnotes

**[1] Habeas Corpus 197 ⟨Key⟩899**

197 Habeas Corpus
   197IV Operation and Effect of Determination; Res Judicata; Successive Proceedings
     197k899 k. Dismissal or hearing on successive petitions; evidence. Most Cited Cases
   Court of Criminal Appeals would reconsider, on its own initiative, applicant's initial application for writ of habeas corpus, which the Court had previously denied, and, thus, would dismiss applicant's subsequent habeas application. Rules App.Proc., Rule 79.2(d).

**[2] Habeas Corpus 197 ⟨Key⟩894.1**

197 Habeas Corpus
   197IV Operation and Effect of Determination; Res Judicata; Successive Proceedings
     197k894 Refusal to Discharge; Subsequent Applications; Prejudice
       197k894.1 k. In general. Most Cited Cases
   An initial application for a writ of habeas corpus seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications.

**[3] Criminal Law 110 ⟨Key⟩273.1(3)**

110 Criminal Law
   110XV Pleas
     110k272 Plea of Guilty
       110k273.1 Voluntary Character
         110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases
   Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ⟨Key⟩273.1(3)**

110 Criminal Law
   110XV Pleas

U. S. Government ...
DEPOSITORY
Margaret and Herman Brown Library
Abilene Christian University
Abilene, TX 79601

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 ☞273.1(3)**

110 Criminal Law
110XV Pleas
110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly.

**[6] Pardon and Parole 284 ☞42.1**

284 Pardon and Parole
284II Parole
284k42 Constitutional and Statutory Provisions
284k42.1 k. In general. Most Cited Cases

**Prisons 310 ☞248**

310 Prisons
310II Prisoners and Inmates
310II(F) Duration of Confinement
310k248 k. Conditional release; community placement. Most Cited Cases

The statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory supervision or parole.

**[7] Pardon and Parole 284 ☞48.1**

284 Pardon and Parole
284II Parole
284k48 Eligibility for Parole or Parole Consideration

284k48.1 k. In general. Most Cited Cases

Parole eligibility requirements are direct consequences of a guilty plea because they are a definite and largely automatic result of a guilty plea.

**[8] Pardon and Parole 284 ☞47**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k47 k. Discretionary nature. Most Cited Cases

Parole attainment is not governed by statute and is granted at the discretion of the parole board.

**[9] Constitutional Law 92 ☞2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

**Constitutional Law 92 ☞2790**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2790 k. Punishment in general. Most Cited Cases

A law that changes the punishment for a crime after the crime has been committed is an unconstitutional ex post facto law only if it inflicts a greater punishment than did the previous law. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[10] Constitutional Law 92 ☞2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 €═►273.1(3)**

110 Criminal Law
110XV Pleas
110k272 Plea of Guilty
110k273.1 Voluntary Character
110k273.1(3) k. Effect of illegal detention or violation of constitutional rights; illegally acquired evidence. Most Cited Cases

A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and knowingly.

**[6] Pardon and Parole 284 €═►42.1**

284 Pardon and Parole
284II Parole
284k42 Constitutional and Statutory Provisions
284k42.1 k. In general. Most Cited Cases

**Prisons 310 €═►248**

310 Prisons
310II Prisoners and Inmates
310II(F) Duration of Confinement
310k248 k. Conditional release; community placement. Most Cited Cases

The statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory supervision or parole.

**[7] Pardon and Parole 284 €═►48.1**

284 Pardon and Parole
284II Parole
284k48 Eligibility for Parole or Parole Consideration
284k48.1 k. In general. Most Cited Cases

Parole eligibility requirements are direct consequences of a guilty plea because they are a definite and largely automatic result of a guilty plea.

**[8] Pardon and Parole 284 €═►47**

284 Pardon and Parole
284II Parole
284k45 Authority or Duty to Grant Parole or Parole Consideration
284k47 k. Discretionary nature. Most Cited Cases

Parole attainment is not governed by statute and is granted at the discretion of the parole board.

**[9] Constitutional Law 92 €═►2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

**Constitutional Law 92 €═►2790**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2790 k. Punishment in general. Most Cited Cases

A law that changes the punishment for a crime after the crime has been committed is an unconstitutional ex post facto law only if it inflicts a greater punishment than did the previous law. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[10] Constitutional Law 92 €═►2789**

92 Constitutional Law
92XXIII Ex Post Facto Prohibitions
92XXIII(A) Constitutional Prohibitions in General
92k2789 k. Penal laws in general. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

A statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post facto with reference to that crime. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[11] Criminal Law 110 ⚷1920**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1920 k. Plea. Most Cited Cases

The question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of the court's deficient performance inquiry under the *Strickland* test for ineffective assistance of counsel; abrogating, *Ex parte Evans*, 690 S.W.2d 274. U.S.C.A. Const.Amend. 6.

**[12] Habeas Corpus 197 ⚷486(3)**

197 Habeas Corpus
  197II Grounds for Relief; Illegality of Restraint
    197II(B) Particular Defects and Authority for Detention in General
      197k482 Counsel
        197k486 Adequacy and Effectiveness of Counsel
          197k486(3) k. Arraignment and plea. Most Cited Cases

To obtain habeas corpus relief on a claim of involuntary plea based on counsel's erroneous advice, a habeas corpus applicant must meet both prongs of the *Strickland* standard for ineffective assistance of counsel, which are that counsel's performance was deficient, and that a probability exists, sufficient to undermine the court's confidence in the result, that the outcome would have been different but for counsel's deficient performance; in the context of involuntary plea, the "different outcome" is choosing not to plead and instead choosing to go to trial. U.S.C.A. Const.Amend. 6.

**[13] Criminal Law 110 ⚷1882**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)1 In General
        110k1879 Standard of Effective Assistance in General
          110k1882 k. Deficient representation in general. Most Cited Cases

Counsel's performance is deficient, as necessary to establish ineffective assistance, if it is shown to have fallen below an objective standard of reasonableness; the constitutionally appropriate level of reasonableness is defined by the practices and expectations of the legal community and prevailing professional norms therein. U.S.C.A. Const.Amend. 6.

**[14] Criminal Law 110 ⚷1920**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1920 k. Plea. Most Cited Cases

In situations in which the law is not clear, plea counsel should advise a client that pending criminal charges may carry a risk of other serious consequences; however, when a serious consequence is truly clear, counsel has an equally clear duty to give correct advice, and both failure to provide correct information and providing incorrect information violate that duty.

**[15] Criminal Law 110 ⚷1920**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1920 k. Plea. Most Cited Cases

Defense counsel's misinformation to murder defendant as to his parole eligibility, on which defendant relied in pleading guilty, constituted deficient performance, as element of ineffective assistance; parole eligibility requirements were presumptively mandatory, and counsel provided incor-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

U. S.

Margaret and Herman Brown Library
Abilene Christian University
Abilene. TX 79601

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

rect advice. U.S.C.A. Const.Amend. 6; Vernon's Ann.Texas C.C.P. art. 42.18(8)(b)(3) (Repealed).

**[16] Criminal Law 110 ⟡1920**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1920 k. Plea. Most Cited Cases
    Defense counsel's misinformation to murder defendant as to his parole eligibility, on which defendant relied in pleading guilty, prejudiced defendant, and thus was ineffective assistance; portion of defendant's sentence that had be served before he became eligible for parole was double the portion that he was led to believe he had to serve, and defendant swore in an affidavit that he would not have pled guilty if he had known the actual time he would have to serve. U.S.C.A. Const.Amend. 6; Vernon's Ann.Texas C.C.P. art. 42.18(8)(b)(3) (Repealed).

**\*686** Randy Schaffer, Houston, for Appellant.

Andrew J. Smith, Asst. D.A., Houston, Lisa C. McMinn, State's Attorney, Austin, for State.

### *OPINION*

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined.

    Applicant pled guilty to the offense of murder without an agreement for punishment. The trial court accepted the plea and sentenced applicant to seventy-five years' incarceration. On direct appeal, the court of appeals affirmed the judgment of the trial court. *Moussazadeh v. State,* 962 S.W.2d 261 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) ( *Moussazadeh I* ). Thereafter, applicant filed an application for habeas corpus relief. In a published opinion, we denied relief because applicant "failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential

element of the plea agreement." *Ex parte Moussazadeh,* 64 S.W.3d 404, 413 (Tex.Crim.App.2001) , *cert. denied,* 537 U.S. 813, 123 S.Ct. 74, 154 L.Ed.2d 16 (2002) ( *Moussazadeh II,* # AP–74,185). Applicant filed a subsequent application for writ of habeas corpus, *Moussazadeh III,* # AP–76,439, that **\*687** asserts that trial counsel's mistaken advice regarding parole eligibility rendered his plea involuntary. We ordered the subsequent application filed and set for submission. After applicant filed the subsequent application, he also filed a suggestion for reconsideration that asks this Court, on its own motion, to reconsider its decision in *Moussazadeh II.*

    [1][2] This Court, on its own initiative, may reconsider a prior denial of habeas corpus relief. TEX.R.APP. P. 79.2(d). We now reconsider, on our own initiative, the claim raised in applicant's second application for writ of habeas corpus, *Moussazadeh II,*[FN1] and grant relief. Applicant's subsequent application, *Moussazadeh III,* is dismissed.

> FN1. Applicant's first application sought an out-of-time appeal, which we granted. *Ex parte Moussazadeh,* No. AP–72,200 (Tex.Crim.App. delivered October 25, 1995) (not designated for publication). Such an initial application seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar subsequent writ applications. *Ex parte McPherson,* 32 S.W.3d 860, 861 (Tex.Crim.App.2000).

    In *Moussazadeh II,* we discussed how applicant, under indictment for a capital murder committed on September 12, 1993, pled guilty to the reduced offense of murder without a sentencing agreement. Applicant, a juvenile at the time of the offense, served as "look-out" while one of his three co-defendants shot and killed a man during a robbery. *Moussazadeh II,* 64 S.W.3d at 406–07. While initially rejecting the state's offer of a guilty plea to the lesser offense of murder, ultimately applicant agreed to plead guilty to murder without a punish-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

ment agreement. The agreement included applicant's promise to testify at a co-defendant's trial, which he did. *Id.* at 407–09. During that testimony, applicant indicated that he understood that, in pleading guilty to the murder offense and because of parole-eligibility laws, he was facing a significantly lesser term of imprisonment than he would have faced if convicted of capital murder. *Id.* at 408–09. After the co-defendant's trial ended, applicant was sentenced to seventy-five years' incarceration without a deadly-weapon finding. *Id.* at 409.

Applicant's claim in his previous writ application, which we now reconsider, asserted that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary." He argued that "the matter of parole eligibility was implicitly incorporated in [his] plea agreement." He also argued that his "guilty plea was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." We quote from our opinion in *Moussazadeh II.*

It is quite possible that no one in this proceeding knew that the parole law had changed dramatically just 11 days before this robbery-murder. Applicant's parole eligibility is measured by the law in effect on the date of the offense. Under the law effective *until* September 1, 1993, a person serving a life sentence for capital murder was not eligible for parole until serving a flat 35 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(2). *After* September 1, 1993, that person was not eligible for parole until serving a flat 40 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(2) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person whose conviction included a deadly weapon finding was not eligible for parole until he had served a flat one-fourth of his sentence, up to a maximum of 15 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person whose conviction contained a deadly weapon finding was required to serve a flat one-half *688 of the sentence up to a maximum of 30 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993). Under the law effective *until* September 1, 1993, a person convicted of murder (but whose conviction did not contain a deadly weapon finding) was eligible for parole when his good time plus flat time equaled one-quarter of the sentence up to 15 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3). *After* September 1, 1993, a person convicted of murder was not eligible for parole until he had served one-half of his sentence or 30 years. TEX.CODE CRIM. PROC. Art. 42.18, § 8(b)(3) (effective Sept. 1, 1993).

The affidavits submitted by both applicant and his trial counsel with his habeas application state that they did not know of these statutory changes. Indeed, we may fairly infer from the record that the judge, prosecutor, and [the co-defendant's] counsel shared the same misunderstanding. However, neither trial counsel's nor applicant's affidavits state that the prosecutor agreed to make applicant's parole eligibility a term or essential element of the plea agreement. There is no evidence that the prosecutor ever discussed any specific term or particular percentage of the sentence that he believed applicant should or would serve in return for the prosecutor's dropping the charges from capital murder to straight murder. In sum, we are unable to find any evidence that proves the prosecutor or judge caused applicant to plead guilty based upon an incorrect understanding of Texas parole law. [Citation omitted.]

*Id.* at 409–10.

In *Moussazadeh II,* we held that a finding that parole eligibility formed an essential part of a plea agreement must be founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by both the prosecution and the applicant in a habeas proceeding. *Id.* at 412. We were "unable to conclude ... that parole eligibility played any part, implicit or explicit, in the plea

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Margaret and
Abilene Christian University
Abilene, TX 79601

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

agreement made between the prosecution and applicant." *Id.* at 413. We therefore "den[ied] applicant relief because he ... failed to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of the applicable parole law which formed an essential element of the plea agreement." *Id.* Acknowledging our prior holdings that a guilty plea is not rendered involuntary simply because the defendant received and relied upon erroneous advice of counsel concerning parole eligibility, and that both parole eligibility and parole attainment are highly speculative future facts, we likewise rejected applicant's contention that his plea was involuntary regardless of whether the parole eligibility misinformation was implicitly incorporated into the plea agreement. *Id.* at 413–14.

The circumstances surrounding applicant's conviction are not in dispute. Prior to applicant's plea, trial counsel advised applicant about his parole eligibility, and that advice was incorrect. As we stated in *Moussazadeh II,* "The affidavits submitted by both applicant and his trial counsel with his habeas application state that they did not know of these [recently effective] statutory changes [in the parole-eligibility law]. Indeed, we may fairly infer from the record that the judge, prosecutor, and counsel for [the co-defendant against whom applicant testified] shared the same misunderstanding." *Moussazadeh II,* 64 S.W.3d at 410.

[3][4][5] Counsel's advice can provide assistance so ineffective that it renders a guilty plea involuntary. *689Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); "voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' "). A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App.1980). A defendant's decision to plead guilty when based upon erroneous advice of counsel is not done voluntarily and

knowingly. *Ex parte Battle,* 817 S.W.2d 81, 83 (Tex.Crim.App.1991). *See also Ex parte Harrington,* 310 S.W.3d 452, 459 (Tex.Crim.App.2010) ("When counsel's representation falls below this [ *Strickland* ] standard, it renders any resulting guilty plea involuntary.").

Applicant's initial application contended that "counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary," "the matter of parole eligibility was implicitly incorporated in [his] plea agreement," and that his "plea agreement was involuntary even if the matter of parole eligibility was not implicitly incorporated in the plea agreement." Applicant now asks this Court to reconsider his application in light of *Padilla v. Kentucky,* 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), and overrule our previous decisions in *Ex parte Evans,* 690 S.W.2d 274 (Tex.Crim.App.1985), and *Moussazadeh II.*

The state contends that *Padilla* has no bearing upon the Court's disposition of applicant's claim and that *Ex parte Evans* and *Moussazadeh II* are "still based upon sound logic regarding parole eligibility and parole attainment as being highly speculative circumstances that does [sic] not render a guilty plea involuntary."

We conclude that both applicant and the state are partly correct: *Padilla* is not applicable to the facts before us, and our decisions in *Ex parte Evans* and *Moussazadeh II* were incorrect. We now disavow our prior decisions in *Ex parte Evans* and *Moussazadeh II* to the extent that they (1) require *parole-eligibility* misinformation to form an essential part of the plea agreement in order to make a showing of an involuntary plea that resulted from ineffective assistance of counsel, based upon such misinformation and (2) fail to appropriately recognize the distinction between parole *eligibility* and parole *attainment.*

[6] We have previously held that, because of the extremely speculative nature of parole attainment, advice from counsel concerning parole does

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

not render a plea involuntary. *Ex parte Evans,* 690 S.W.2d at 279. However, *Evans* stated that, because "eligibility for parole is a fluctual [sic] societal decision; highly subject to change," *id.* at 278, an applicant must prove, by a preponderance of the evidence, that parole eligibility was an affirmative part or essential element of the plea bargain. [FN2] *Id.* This is an incorrect statement of the law. While the general eligibility rules for parole may change over time, the eligibility rules remain the same for a given conviction. Likewise, an inmate who was eligible for mandatory release at the time of the offense remains eligible for mandatory release on that conviction, even if that offense subsequently becomes eligible for only discretionary mandatory release. "The statute in effect when the holding offense is committed determines an inmate's eligibility for release on mandatory*690 supervision or parole." *Ex parte Thompson,* 173 S.W.3d 458, 459 (Tex.Crim.App.2005). *Evans* held that, because parole attainment was speculative, its "legal importance on the subject of voluntariness of a guilty plea" should be "discounted." *Ex parte Evans,* 690 S.W.2d at 279. Then, based on its incorrect statement of law, *Evans* made an erroneous logical leap and applied the same standard to parole eligibility. As a result, *Evans* held that erroneous advice as to either parole eligibility or parole attainment would not render a plea involuntary. *Id.* In *Moussazadeh II,* we further conflated the concepts of eligibility and attainment.

> FN2. *See also Ex parte Trahan,* 781 S.W.2d 291, 292–93 (Tex.Crim.App.1989) (written plea memorandum reflected that applicant would become eligible for parole consideration after having served one-fourth of sentence; habeas relief available when that was not the law and terms of plea agreement were impossible to fulfill).

Although one can determine current parole eligibility with some degree of certainty, it is really parole attainment that is significant to a plea bargaining defendant. It matters very little that a person is eligible for parole in one year on a ten year sentence if virtually no one is being paroled in less than seven or eight years on a ten year sentence. It is for this reason that we have termed parole attainment "too speculative to warrant being given effect upon" a defendant's guilty plea. 64 S.W.3d at 413, *quoting Evans, supra.*

[7][8][9][10] Contrary to our prior decisions, there are considerable, concrete distinctions between parole *attainment* and parole *eligibility.* Parole attainment is indeed highly speculative, due to various factors associated with circumstances surrounding an individual prisoner's parole application, such as the prisoner's behavior in prison, the composition and attitude of the parole board, the identity and attitude of the governor, the population of the prison system, and regulations governing "good time." *See Ex parte Carillo,* 687 S.W.2d 320, 325 (Tex.Crim.App.1985) (Miller, J., concurring). The question of parole eligibility, however, elicits a straightforward answer because an applicant's parole eligibility is determined by the law in effect on the date of the offense. *Ex parte Thompson,* 173 S.W.3d at 459. The statutes that govern the punishment of a particular offense control the issue of parole eligibility and are not subject to alteration, absent legislative amendment. Even in the event of a legislative amendment making a law more stringent, an applicant is subject only to the law governing parole eligibility at the time the offense was committed. *See Ex parte Alegria,* 464 S.W.2d 868, 874–75 (Tex.Crim.App.1971) (retroactive application of parole statute that increased defendant's cumulation of years required for parole eligibility violated *ex post facto* clauses of United States and Texas Constitutions). [FN3] Parole-eligibility requirements are direct consequences because they are a definite and largely automatic result of a guilty plea. *See Mitschke v. State,* 129 S.W.3d 130, 135 (Tex.Crim.App.2004). Parole attainment, on the other hand, is not governed by statute and is granted at the discretion of the parole board.

> FN3. A law that changes the punishment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

for a crime after the crime has been committed is an unconstitutional *ex post facto* law only if it inflicts a greater punishment than did the previous law. *Ex parte Tate,* 471 S.W.2d 404, 406 (Tex.Crim.App.1971) (op. on reh'g); *Ex parte Scott,* 471 S.W.2d 54, 55–6 (Tex.Crim.App.1971). "[A] statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as *ex post facto* with reference to that crime." *Rooney v. North Dakota,* 196 U.S. 319, 325, 25 S.Ct. 264, 49 L.Ed. 494 (1905).

On a claim of involuntary plea, the standard for the analysis of harm under the *Strickland* protocol as expressed in these cases may be stated generally as "but for the erroneous advice of counsel, the applicant*691 would not have plead guilty." *Ex parte Harrington,* 310 S.W.3d at 458. *See also Ex parte Moody,* 991 S.W.2d 856, 858 (Tex.Crim.App.1999); *Ex parte Stephenson,* 722 S.W.2d 426, 428 (Tex.Crim.App.1987).

[11] When deciding whether to accept or reject a plea offer, a defendant will likely consider the actual minimum amount of time he will spend incarcerated. In order to properly consider his options, a defendant needs accurate information about the law concerning parole eligibility. Although we continue to recognize the distinction between direct and collateral consequences, we now hold that the question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of this Court's deficient-performance inquiry under *Strickland.*

[12] To obtain habeas corpus relief on a claim of involuntary plea, an applicant must meet both prongs of the *Strickland* standard: (1) counsel's performance "was deficient; and (2) that a probability exists, sufficient to undermine our confidence in the result, that the outcome would have been different but for counsel['s] deficient performance." *Ex parte White,* 160 S.W.3d 46, 49 (Tex.Crim.App.2004). In

the context of involuntary plea, the "different outcome" is choosing not to plead and instead choosing to go to trial.

[13][14] Counsel's performance is deficient if it is shown to have fallen below an objective standard of reasonableness. *Id.* at 51; *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The constitutionally appropriate level of reasonableness is defined by the practices and expectations of the legal community and prevailing professional norms therein. *Strickland, supra,* at 688, 104 S.Ct. 2052. In situations in which the law is not clear, counsel should advise a client that pending criminal charges may carry a risk of other serious consequences. When a serious consequence is truly clear, however, counsel has an equally clear duty to give correct advice. Both failure to provide correct information and providing incorrect information violate that duty.

[15] The terms of the relevant parole-eligibility statute are succinct and clear with respect to the consequences of a guilty plea. Based upon the date in which the instant offense was committed, Tex.Code Crim. Proc. art. 42.18 § 8(b)(3) clearly and succinctly provided that "a person convicted of murder was not eligible for parole until he had served one-half of his sentence or thirty years." *Moussazadeh II, supra,* at 409. Applicant's counsel could have easily determined the applicable parole-eligibility requirements simply by reading the text of the statute. Instead, applicant's counsel failed to inform him of changes in the parole-eligibility statutes that essentially doubled the length of time he must serve before becoming eligible for parole. The fact that the amendments took effect only eleven days before the offense is of no consequence.[FN4]

> FN4. Parole eligibility is not speculative. In this case, parole eligibility was statutorily determined and, at the time of the plea, there was no speculation about those statutory terms. Those terms of parole *eligibility* were clear, succinct, and explicit. It appears that all parties involved were un-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

aware that parole eligibility had changed significantly just a few days before the commission of the alleged offense.

The performance of applicant's counsel was deficient: the consequences of applicant's plea could have been easily determined by reading the applicable statute. Parole-eligibility requirements are presumptively mandatory, and applicant's trial counsel provided incorrect advice. We *692 conclude that applicant has sufficiently proved that his counsel was constitutionally deficient.

[16] The portion of applicant's sentence that must be served before he becomes eligible for parole was double the portion that he was led to believe he must serve. Based on applicant's affidavit of January 13, 1997,[FN5] we also conclude that applicant would not have pled guilty if he had known the actual time he would have to serve, and thus prejudice is shown. We find that the habeas court's findings of fact and conclusions of law are supported by the record and agree that relief should be granted.

> FN5. "Had Judge Azios, Mr. Jones, or Mr. Cogdell told me that a murder conviction would require me to serve aggravated time of one-half of my sentence, up to a maximum of 30 years, even without a deadly weapon finding, I would not have accepted the plea bargain."

Accordingly, upon reconsideration, we grant relief. The judgment in this cause is hereby vacated, and applicant is remanded to the custody of the Harris County Sheriff to answer the charges set out in the indictment. The trial court shall issue an appropriate bench warrant within ten days after the mandate of this Court issues. Copies of this opinion shall be sent to the trial court and to the Texas Department of Criminal Justice, correctional institutions division.

KELLER, P.J., filed a concurring opinion. MEYERS, J., did not participate.

KELLER, P.J., concurring.

In overruling *Ex parte Evans,*[FN1] the Court creates a new rule of constitutional law. Under *Teague,* with some exceptions, federal courts may not announce or apply new rules of constitutional law on collateral review.[FN2] The states are not bound by the *Teague* rule and may afford retroactive effect on collateral review in situations not allowed under *Teague.*[FN3] Nevertheless, with respect to the new Confrontation Clause holding articulated in *Crawford v. Washington,*[FN4] we applied the rule in *Teague* to bar retroactive application on habeas corpus.[FN5] The Court does not conduct a retroactivity analysis in this case, and I do not know its reason for making the new rule retroactive. Has the Court abandoned *Teague* altogether in favor of its own retroactivity analysis? Does it intend to adhere to *Teague,* but with state-created exceptions? Do any exceptions—articulated in *Teague* or state-created—apply in the present case? If the Court is going to overrule prior precedent on habeas review, as it does here, I believe that it should clearly explain how this fits into our retroactivity jurisprudence.

> FN1. 690 S.W.2d 274 (Tex.Crim.App.1985).
>
> FN2. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).
>
> FN3. *Danforth v. Minnesota,* 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008); *Ex parte Lave,* 257 S.W.3d 235, 237 & n. 15 (Tex.Crim.App.2008).
>
> FN4. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
>
> FN5. *Lave,* 257 S.W.3d at 237; *Ex parte Keith,* 202 S.W.3d 767 (Tex.Crim.App.2006).

There is an easier way to resolve this case. During the plea colloquy, the trial judge was prepared to make a deadly weapon finding, but the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

N. S. G...

Margaret and H...

Abilene Christian University

Abilene, TX 79...

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

parties explained that the issue was to be left open for the judge to determine at punishment, which would be assessed after applicant testified against a co-defendant in accordance with the plea agreement.[FN6] This explanation was consistent with the parties agreeing *693 that applicant would have his chance, after cooperating with the State, to persuade the trial judge to make his time "non-aggravated," i.e. subject to more generous parole-eligibility rules available to non–3g offenses.[FN7] But less than two weeks before the offense had been committed, the law had changed to treat murder as an "aggravated" offense for parole-eligibility purposes, regardless of whether there was a deadly-weapon finding.[FN8] In its findings of fact on applicant's original habeas application, the habeas judge found that the prosecutor and the trial judge ratified defense counsel's misinformation about parole eligibility "by attaching significance to the deadly weapon finding."[FN9] The habeas judge recommended that applicant be granted a new trial.

> FN6. *See Ex parte Moussazadeh,* 64 S.W.3d 404, 408 (Tex.Crim.App.2001).

> FN7. *See* TEX.CODE CRIM. PROC. art. 42.12 § 3g; TEX. GOV'T CODE § 508.145(d).

> FN8. *Moussazadeh,* 64 S.W.3d at 409.

> FN9. The habeas judge also found that appellant would not have pleaded guilty absent the misinformation.

In our original opinion on applicant's habeas application, we declined to follow the habeas judge's finding, and her ultimate recommendation, because it required "too many inferences stacked upon each other" for the deferral of the deadly weapon issue "to support a finding that it was the parties' clear intention that parole eligibility was an essential element of the plea bargain."[FN10] We cited no authority for this "inference-stacking" holding,[FN11] and thus it does not appear to be based upon an established rule that we would have

to change. Moreover, with regard to the advice given in *Evans,* we said in that case:

> FN10. *Id.* at 413.

> FN11. *See id.*

No overt sanctioning of this advice by the judge or the prosecutor appears in the record and it does, not appear to have been a part of the plea bargain. We realize that it is common for the parties to play the guessing game of parole eligibility in plea negotiations. We decline, however, to elevate this common practice to the status of an element of the plea bargain without some further indication from the record evidencing that status. We conclude, then, that we are not dealing with a broken or impossible plea bargain situation.[FN12]

> FN12. 690 S.W.2d at 277.

Unlike in *Evans,* there was overt sanctioning of the attorney's advice by the judge and the prosecutor, or at least the habeas court could so rationally conclude, as it has done. Thus, we simply misanalyzed the issue under *Evans,* and it is appropriate for us to reconsider the issue now.

Further, since our original opinion in this case, we have decided *Hooper,* where we indicated that inference stacking was not necessarily irrational and that we should focus, not on whether inferences are being stacked, but simply on the rationality of the inferences in addressing the sufficiency of the evidence to support a conviction.[FN13]

> FN13. *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007). If it were necessary to decide whether *Hooper*'s pronouncement regarding inference stacking constituted a new rule under *Teague,* I would hold that it does not, because, regardless of the scope of Texas's version of *Teague*'s proscription against announcing new constitutional rules of criminal procedure on habeas, *see Danforth, supra,* such a proscription cannot apply to basic

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

361 S.W.3d 684
(Cite as: 361 S.W.3d 684)

standards of habeas practice. Otherwise a court could never change its procedures or standards on habeas.

Finally, I would not hold, as the Court appears to do,[FN14] that the simple failure to *694 convey information about parole eligibility renders a guilty plea involuntary. We need not address whether counsel has an obligation to convey information about the parole consequences of a plea. In this case, it is enough to hold that, if counsel does convey this type of information, he must do so correctly. Here, the information was incorrect.

> FN14. "Both failure to provide correct information and providing incorrect information violate that duty[.]" Court's opinion at 691.

Although I agree that applicant is entitled to a new trial, I do not join the Court's opinion. I concur in the Court's judgment.

Tex.Crim.App.,2012.
Ex Parte Moussazadeh
361 S.W.3d 684

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

No. ND 5591 (Single Count) **TRN 010 107 3208**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 1-A JUDICIAL DREE ALLEN |
| v. | § | DISTRICT COURT OF NEWTON COUNTY TEXAS |
| JAMES ALLEN PELLOAT, | § | NEWTON COUNTY TEXAS |
| DEFENDANT | | |

SID: **TX**

# JUDGMENT OF CONVICTION BY COURT;
# SENTENCE TO **Institutional Division, TDCJ**

| | |
|---|---|
| DATE OF JUDGMENT: | **March 24, 2005** |
| JUDGE PRESIDING: | **Monte D. Lawlis** |
| ATTORNEY FOR THE STATE: | **A. W Davis, Jr.** |
| ATTORNEY FOR THE DEFENDANT: | **William S. Morian, Jr.** |
| OFFENSE: | **Improper Relationship Between an Educator and a Student** |
| STATUTE FOR OFFENSE: | **Section 21.12, Penal Code** |
| DEGREE OF OFFENSE: | **Second Degree Felony** |
| APPLICABLE PUNISHMENT RANGE (including enhancements, if any): | **Second Degree 2-20 yrs in prison/max $10,000 fine** |
| DATE OF OFFENSE: | **On or about November 7, 2004.** |
| CHARGING INSTRUMENT: | **Indictment** |
| TERMS OF PLEA AGREEMENT (IN DETAIL): | **James Allen Pelloat will plead guilty to the following four cases, all 2nd Degree Felonies: No. ND-5991, Improper Relationship (21.12 P.C.); ND-5592, Sexual Assault (21.011 P.C.); ND-5593, Sexual Assault (21.011 P.C.); ND-5594 Improper Relationship (21.12 P.C.); and ND-5617 Sexual Assault (21.011 P.C.), reduced from Aggravated Sexual Assault (22.021 P.C.). Case No. ND-5618, Improper Relationship (21.12 P.C.) will be dismissed. The defendant will receive a sentence of twenty (20) years on each of the four cases, with the sentence in case No. ND-5992 and the sentence in case No. ND-5617 to run consecutively. The sentences in the two remaining cases are to run concurrently. Defendant will receive credit for time served in the Newton County Jail in the amount of 138 days.** |
| PLEA TO OFFENSE: | **Guilty** |
| PLEA TO ENHANCEMENT PARAGRAPH(S): | **Not Applicable** |
| VERDICT FOR OFFENSE: | **Guilty** |
| FINDING ON ENHANCEMENT: | **Not Applicable** |
| AFFIRMATIVE FINDING ON DEADLY WEAPON: | **Not Applicable** |
| OTHER AFFIRMATIVE SPECIAL FINDINGS: | **Not Applicable** |
| DATE SENTENCE IMPOSED: | **March 24, 2005** |
| PUNISHMENT AND PLACE OF CONFINEMENT: | **Twenty (20) years in the Institutional Division-TDCJ, and No fine** |
| TIME CREDITED TO SENTENCE: | **138 days** |

DS2: Judgment of Conviction by Court; Direct Sentence, Cause No. ND 5591; Page 1 of 3 Pages

*FILED FOR RECORD*

*2005 MAR 24 P 2:33*

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 1-A JUDICIAL |
| v. | § | DISTRICT COURT OF |
| JAMES ALLEN PELLOAT, | § | NEWTON COUNTY, TEXAS |
| DEFENDANT | | |
| SID: TX | | |

# JUDGMENT OF CONVICTION BY COURT; SENTENCE TO Institutional Division, TDCJ

| | |
|---|---|
| DATE OF JUDGMENT: | March 24, 2005 |
| JUDGE PRESIDING: | Monte D. Lawlis |
| ATTORNEY FOR THE STATE: | A. W Davis, Jr. |
| ATTORNEY FOR THE DEFENDANT: | William S. Morian, Jr. |
| OFFENSE: | Sexual Assault |
| STATUTE FOR OFFENSE: | Section 22.011, Penal Code |
| DEGREE OF OFFENSE: | Second Degree Felony |
| APPLICABLE PUNISHMENT RANGE (including enhancements, if any): | Second Degree 2-20 yrs in prison/max $10,000 fine |
| DATE OF OFFENSE: | November 7, 2004 |
| CHARGING INSTRUMENT: | Indictment |
| TERMS OF PLEA AGREEMENT (IN DETAIL): | James Allen Pelloat will plead guilty to the following four ~~five~~ cases, all 2nd Degree Felonies: No. ND-5991, Improper Relationship (21.12 P.C.); ~~ND-5593, Sexual Assault (21.011 P.C.)~~; ND-5593, Sexual Assault (21.011 P.C.); ND-5594 Improper Relationship (21.12 P.C.); and ND-5617 Sexual Assault (21.011 P.C.), reduced from Aggravated Sexual Assault (22.021 P.C.). Case No. ND-5618, Improper Relationship (21.12 P.C.) will be dismissed. The defendant will receive a sentence of twenty (20) years on each of the four ~~five~~ cases, with the sentence in case No. ND-5992 and the sentence in case No. ND-5617 to run consecutively. The sentences in the two ~~three~~ remaining cases are to run concurrently. Defendant will receive credit for time served in the Newton County Jail in the amount of 138 days |
| PLEA TO OFFENSE: | Guilty |
| PLEA TO ENHANCEMENT PARAGRAPH(S): | Not Applicable |
| VERDICT FOR OFFENSE: | Guilty |
| FINDING ON ENHANCEMENT: | Not Applicable |
| AFFIRMATIVE FINDING ON DEADLY WEAPON: | Not Applicable |
| OTHER AFFIRMATIVE SPECIAL FINDINGS: | Not Applicable |
| DATE SENTENCE IMPOSED: | March 24, 2005 |
| PUNISHMENT AND PLACE OF CONFINEMENT: | Twenty (20) years in the Institutional Division-TDCJ, and No fine |
| TIME CREDITED TO SENTENCE: | 138 days |
| COURT COSTS: | None |

DS2: Judgment of Conviction by Court; Direct Sentence, Cause No. ND 5593; Page 1 of 3 Pages

No. ND 5594 (Single Count) TRN 010 107 3208

FILED FOR RECORD

2005 MAR 24 P 2: 33

DREE ALLEN
DISTRICT CLERK
NEWTON COUNTY, TEXAS

| THE STATE OF TEXAS | § | IN THE 1-A JUDICIAL |
| v. | § | DISTRICT COURT OF |
| JAMES ALLEN PELLOAT, | § | NEWTON COUNTY, TEXAS |
| DEFENDANT | | |

SID: TX

# JUDGMENT OF CONVICTION BY COURT; SENTENCE TO Institutional Division, TDCJ

| | |
|---|---|
| DATE OF JUDGMENT: | March 24, 2005 |
| JUDGE PRESIDING: | Monte D. Lawlis |
| ATTORNEY FOR THE STATE: | A. W Davis, Jr. |
| ATTORNEY FOR THE DEFENDANT: | William S. Morian, Jr. |
| OFFENSE: | Improper Relationship Between an Educator and Student |
| STATUTE FOR OFFENSE: | Section 21.12, Penal Code |
| DEGREE OF OFFENSE: | Second Degree Felony |
| APPLICABLE PUNISHMENT RANGE (including enhancements, if any): | Second Degree 2-20 yrs in prison/max $10,000 fine |
| DATE OF OFFENSE: | On or about November 7, 2004. |
| CHARGING INSTRUMENT: | Indictment |
| TERMS OF PLEA AGREEMENT (IN DETAIL): | James Allen Pelloat will plead guilty to the following four cases, all 2nd Degree Felonies: No. ND-5991, Improper Relationship (21.12 P.C.); ND-5592, Sexual Assault (21.011 P.C.); ND-5593, Sexual Assault (21.011 P.C.); ND-5594 Improper Relationship (21.12 P.C.); and ND-5617 Sexual Assault (21.011 P.C.), reduced from Aggravated Sexual Assault (22.021 P.C.). Case No. ND-5618, Improper Relationship (21.12 P.C.) will be dismissed. The defendant will receive a sentence of twenty (20) years on each of the four cases, with the sentence in case No. ND-5992 and the sentence in case No. ND-5617 to run consecutively. The sentences in the two remaining cases are to run concurrently. Defendant will receive credit for time served in the Newton County Jail in the amount of 138 days. |
| PLEA TO OFFENSE: | Guilty |
| PLEA TO ENHANCEMENT PARAGRAPH(S): | Not Applicable |
| VERDICT FOR OFFENSE: | Guilty |
| FINDING ON ENHANCEMENT: | Not Applicable |
| AFFIRMATIVE FINDING ON DEADLY WEAPON: | Not Applicable |
| OTHER AFFIRMATIVE SPECIAL FINDINGS: | Not Applicable |
| DATE SENTENCE IMPOSED: | March 24, 2005 |
| PUNISHMENT AND PLACE OF CONFINEMENT: | Twenty (20) years in the Institutional Division-TDCJ, and No fine |
| TIME CREDITED TO SENTENCE: | 138 days |

DS2: Judgment of Conviction by Court; Direct Sentence, Cause No. ND 5594; Page 1 of 3 Pages

No. ND 5617 (Single Count) TRN 010 107 3208

FILED FOR RECORD

2005 MAR 24 P 2: 32

CINEE ALLEN
DISTRICT CLERK
NEWTON COUNTY, TEXAS
BY

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 1-A JUDICIAL |
| V. | § | DISTRICT COURT OF |
| JAMES ALLEN PELLOAT, | § | NEWTON COUNTY, TEXAS |
| DEFENDANT | | |

SID: TX

# JUDGMENT OF CONVICTION BY COURT; SENTENCE TO Institutional Division, TDCJ

| | |
|---|---|
| DATE OF JUDGMENT: | March 24, 2005 |
| JUDGE PRESIDING: | Monte D. Lawlis |
| ATTORNEY FOR THE STATE: | A. W Davis, Jr. |
| ATTORNEY FOR THE DEFENDANT: | William S. Morian, Jr. |
| OFFENSE: | Sexual Assault |
| STATUTE FOR OFFENSE: | Section 22.011, Penal Code |
| DEGREE OF OFFENSE: | Second Degree Felony |
| APPLICABLE PUNISHMENT RANGE (including enhancements, if any): | Second Degree 2-20 yrs in prison/max $10,000 fine |
| DATE OF OFFENSE: | On or about May 01, 2002. |
| CHARGING INSTRUMENT: | Indictment |
| TERMS OF PLEA AGREEMENT (IN DETAIL): | James Allen Pelloat will plead guilty to the following four cases, all 2nd Degree Felonies: No. ND-5991, Improper Relationship (21.12 P.C.); ND-5592, Sexual Assault (21.011 P.C.); ND-5593, Sexual Assault (21.011 P.C.); ND-5594 Improper Relationship (21.12 P.C.); and ND-5617 Sexual Assault (21.011 P.C.), reduced from Aggravated Sexual Assault (22.021 P.C.). Case No. ND-5618, Improper Relationship (21.12 P.C.) will be dismissed. The defendant will receive a sentence of twenty (20) years on each of the four cases, with the sentence in case No. ND-5992 and the sentence in case No. ND-5617 to run consecutively. The sentences in the three remaining cases are to run concurrently. Defendant will receive credit for time served in the Newton County Jail in the amount of 138 days. |
| PLEA TO OFFENSE: | Guilty |
| PLEA TO ENHANCEMENT PARAGRAPH(S): | Not Applicable |
| VERDICT FOR OFFENSE: | Guilty |
| FINDING ON ENHANCEMENT: | Not Applicable |
| AFFIRMATIVE FINDING ON DEADLY WEAPON: | Not Applicable |
| OTHER AFFIRMATIVE SPECIAL FINDINGS: | Not Applicable |
| DATE SENTENCE IMPOSED: | March 24, 2005 |
| PUNISHMENT AND PLACE OF CONFINEMENT: | Twenty (20) years in the Institutional Division-TDCJ, and No fine |
| TIME CREDITED TO SENTENCE: | 138 days |
| COURT COSTS: | None |